UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

LYNN TILTON,

PATRIARCH PARTNERS, LLC,

PATRIARCH PARTNERS VIII, LLC,

PATRIARCH PARTNERS XIV, LLC, and

PATRIARCH PARTNERS XV, LLC,

                Plaintiffs,

           v.

SECURITIES AND EXCHANGE
COMMISSION,

                Defendant.
-----------------------------------------------------------x

Case No. ___16 CV 7048___

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
DEMAND FOR JURY TRIAL**

Lynn Tilton; Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; and Patriarch Partners XV, LLC, (collectively, "Patriarch" or "Plaintiffs") for their complaint against the Securities and Exchange Commission ("SEC" or the "Commission") allege as follows:

**Preliminary Statement**

1.      Plaintiffs bring this action seeking declaratory and injunctive relief to prevent the Commission from violating Plaintiffs' due process and equal protection rights under the Fifth Amendment of the U.S. Constitution.  In particular, Plaintiffs seek a declaration that the SEC's pattern and practice of requiring enforcement cases to be tried to an initial decision in no more than 300 days regardless of their complexity, its insistence that it need not specify salient factual allegations in charging documents, its reflexive refusal to grant depositions regardless of the interests of justice, its overly narrow view of the staff's obligation to turn over exculpatory

materials, and its approval of the staff's improper use of experts to introduce legal conclusions violates the constitutional rights of not only these Plaintiffs, but also similarly situated respondents in SEC administrative proceedings generally, as a matter of due process.

2.      Although the Commission amended several of its Rules of Practice (the "Rules") to extend deadlines and to liberalize discovery to permit respondents to request depositions in certain cases,[1] among other things, the Commission determined that those amended Rules would not apply to all respondents in ongoing civil penalty proceedings before the SEC.  Rather, they apply only to proceedings in which the prehearing conference has not yet been held as of the effective date of the rules (which will occur on September 27, 2016), as well as to proceedings that are stayed, whether by court or Commission order, as of that date.[2]  In other words, the Commission carved out an exception for respondents such as Plaintiff Lynn Tilton who had the temerity to mount facial challenges to the constitutionality of the SEC's internal administrative tribunals under the Appointments Clause and seek, instead, to have their cases heard in federal court, with all of the constitutional protections afforded there.  In any event, these amendments do nothing to address the SEC's pattern and practice, followed to Plaintiffs' detriment here, of failing to provide sufficient notice of the charges in its charging documents, its exceedingly cramped view of the staff's obligation to turn over exculpatory material to respondents in administrative proceedings, and its reliance on purported experts to offer legal opinions in hearings before the SEC's administrative law judges ("ALJs") that federal courts have repeatedly found impermissible and improper.

---

[1]  *See* Final Rule, *Amendments to the Commission's Rules of Practice*, 81 Fed. Reg. 50,212, 50,214 (July 29, 2016) (to be codified at 17 C.F.R. Pt. 201).

[2]  *Id.* at 50,229.

3.     Plaintiffs also seek a declaration that the SEC's deliberate manipulation of the timing of its Amended Rules of Practice (the "Amended Rules"), to exclude certain individuals who are the subjects of ongoing administrative proceedings and have brought federal court challenges to the constitutionality of those proceedings under the Appointments Clause, violates Plaintiffs' and similarly situated respondents' equal protection rights.

4.     Finally, Plaintiffs seek an injunction enjoining the SEC from proceeding against Plaintiffs (and other similarly situated individuals) in administrative proceedings and from otherwise violating Plaintiffs' due process rights, and requiring the SEC to afford these respondents the benefit of all of its Amended Rules going forward and to refrain from otherwise violating Plaintiffs' equal protection rights.

5.     The SEC Division of Enforcement ("Division"), often with the imprimatur of the Commission, exploits its "home court" advantage in administrative proceedings that seek to impose massive, quasi-criminal penalties, while relegating the targets of these proceedings to "trial by ambush."  The policies and practices employed by the Division include taking substantial time to conduct investigations while insisting that ALJs decide cases on a breakneck timetable regardless of complexity[3]; denying respondents adequate notice of the charges and potential sanctions against them; depriving respondents of a meaningful opportunity to gather information from key witnesses, including by refusing deposition requests, withholding notes of interviews, and declining to identify their investigative interviewees; and withholding essential exculpatory materials, while declining to provide formal guidance in the Division's Enforcement

---

[3] Although the Amended Rules extend the prehearing period following service of the OIP, they cap that period to no more than ten months.  81 Fed. Reg. at 50,214.  In any event, this provision does not apply to currently pending cases, like Plaintiffs' case, where the initial prehearing conference has already been held.  The ALJ has denied motions to extend these deadlines in Plaintiffs' case.

Manual regarding its policy under *Brady v. Maryland*, 373 U.S. 83 (1963).[4]  Individually and collectively, these policies and practices deprive respondents of due process rights under the Fifth Amendment of the U.S. Constitution.  Plaintiffs seek declaratory and injunctive relief to rectify these deprivations.

6.  Plaintiffs' experience in an administrative proceeding before an SEC ALJ is illustrative of the patterns and practices described above and the Commission's endorsement of fundamentally unfair and unconstitutional proceedings.  The Division investigated Plaintiffs in this action for more than five years before the Commission issued an order instituting proceedings ("OIP") against them seeking a disgorgement of over $200 million, an amount nearly seven times more than the SEC collected from all litigated administrative proceedings in 2015.  After that five-year stretch in which the Division collected documents and conducted interviews, an SEC ALJ, consistent with Commission Rules of Practice and with the Commission's consent, ordered that a hearing be held on a timetable that would permit the ALJ to issue an initial decision within 300 days of the issuance of the OIP—less than one-fifth of the time the Division took to prepare for a hearing.[5]  Rather than acting in the interests of justice to rectify this undue advantage, the Division dumped more than 800,000 pages of documents into Plaintiffs' laps, while denying basic requests for exculpatory and impeachment materials, excluding notes of certain interviews from its production to Plaintiffs, and producing expert reports larded with impermissible legal conclusions and numerous other defects.

7.  Plaintiffs were then subject to a series of summary orders by the SEC ALJ.  After Plaintiffs had filed two motions requesting either an extension of the time to begin the hearing or

---

[4]  *See generally* SEC Div. of Enforcement Manual, Office of Chief Counsel (June 4, 2015).
[5]  The Second Circuit ultimately stayed these proceedings pending its review of the dismissal of Plaintiffs' federal court challenge to the constitutionality of the ALJ's appointment.

for the ALJ to seek permission to do so from the full Commission, the ALJ, relying on the SEC's Rules of Practice, denied Plaintiffs' request, warned against filing any additional "frivolous" motions, and threatened to sanction Plaintiffs' counsel.  After Plaintiffs then filed motions in *limine* to exclude expert testimony that violated *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and basic evidentiary principles, the ALJ denied both motions in two-paragraph orders, without even requiring responses from the Division.

8.      Wholly apart from these due process violations is the SEC's discriminatory treatment of individuals like Plaintiffs, who have challenged the SEC's appointment and removal scheme for ALJs as unconstitutional under the Appointments Clause of the U.S. Constitution and separation of powers principles.  In response to greater scrutiny over its use of administrative proceedings, the SEC adopted Amended Rules of Practice that afford respondents in administrative proceedings greater procedural protections in those proceedings.  However, by manipulating the rules' timing and application, on information and belief, the SEC ensured that a number of the most helpful portions of the Amended Rules, including those allowing for depositions and flexibility in the timing of hearings, will not apply to certain individuals who brought Appointments Clause challenges in federal district court and whose administrative proceedings were stayed pending a decision by the federal courts.[6]  The SEC's deliberate decision to withhold application of key provisions of its Amended Rules of Practice to these respondents violates the equal protection rights of those individuals, Plaintiffs among them.  Accordingly, Plaintiffs seek declaratory and injunctive relief to vindicate their equal protection rights under the Fifth Amendment of the U.S. Constitution.

---

[6]  When Plaintiffs sought discovery necessary to prove that the SEC was deliberately targeting them for unequal treatment, the ALJ denied the request in part based on the Division's invocation of the deliberative process privilege, despite noting the Division's failure to make any showing that the privilege applied.

**Jurisdiction, Venue, And Parties**

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1361, 1651, 2201 and 5 U.S.C. §§ 702 and 706.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (e).

10.     Ms. Tilton is a citizen and resident of Florida.

11.     Patriarch Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in New York County, New York.  Ms. Tilton, through an affiliated entity, owns Patriarch Partners, LLC, which is a family office investment firm focused on restructuring and rebuilding distressed American companies.

12.     Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; and Patriarch Partners XV, LLC are limited liability companies organized and existing under the laws of the State of Delaware and having their principal place of business in New York County, New York.  They are owned, through affiliated entities, by Ms. Tilton and a trust for the benefit of her daughter, and until their resignation earlier this year were the collateral managers of distressed debt investment funds structured as collateral loan obligations ("CLOs").

13.     The SEC is an agency of the United States government, headquartered in Washington, D.C.

**Background**

14.     Ms. Tilton founded Patriarch Partners, LLC in 2000 and is its Chief Executive Officer.  Through her ownership of Patriarch and its affiliates, Ms. Tilton runs one of the largest women-owned businesses in the United States.  Patriarch has restructured and rebuilt many companies, including well-known American brands such as Stila Cosmetics, Dura Automotive and MD Helicopters, for which Ms. Tilton also serves as the Chief Executive Officer.

15.     Certain of Patriarch's investment funds, including Zohar CDO 2003-1, Limited; Zohar II 2005-1, Limited; and Zohar III, Limited (collectively, "Zohar Funds"), were structured as CLOs, which raise cash by issuing debt to outside investors, known as noteholders.  The original noteholders were exclusively sophisticated institutional investors.  Ms. Tilton, through personal affiliates, is the principal equity owner of the Zohar Funds and is also a noteholder.

16.     The Zohar Funds' principal investment strategy, unique among CLOs, is to make loans to deeply distressed companies ("portfolio companies") and implement a turnaround strategy to build value for the funds and their noteholders.  This long-term strategy requires that Patriarch have sufficient time and flexibility to provide the companies with the support necessary to effect a turnaround and maximize value.

17.     Ms. Tilton's personal reputation and pivotal management role—both at Patriarch and at the portfolio companies—are integral to those companies, tens of thousands of American jobs, and more than two billion dollars of outstanding Zohar Fund notes.

18.     Ms. Tilton is not registered with the Commission as an investment adviser.  Until early 2012, Patriarch was not required to be a registered investment adviser under the regulatory regime prevailing at that time.  In February 2012, Patriarch XV became a registered investment adviser but ceased being one in March 2016.  Patriarch VIII and Patriarch XIV have never been registered investment advisers but have functioned as "relying advisers."

## The SEC Investigation And Charges Against Plaintiffs

19.     The SEC Division of Enforcement investigated Plaintiffs for more than five years—beginning at least as early as December 2009 and continuing through March 2015.  The crux of the SEC's allegations is that Plaintiffs violated the terms of the governing documents of the Zohar Funds, Patriarch improperly received fees as a result of those violations, and the Zohar

Funds' financial statements were not compliant with generally accepted accounting principles ("GAAP").  The Division staff's theory turns on a sharply contested reading of the Zohar Fund trust indentures, which were negotiated between and among Ms. Tilton and Patriarch, on the one hand, and several highly sophisticated institutional investors, including investment banks, and a monoline insurer, on the other.

20.     The Division issued its first informal document request to Plaintiffs on December 15, 2009, seeking information dating back to 2000.  Over the ensuing five years, the staff subpoenaed and reviewed more than four years of emails of Patriarch employees and Ms. Tilton, issued dozens of subpoenas, interviewed dozens of witnesses on the record, and interviewed more than one hundred witnesses off the record.

21.     On October 4, 2014, the Division staff issued a Wells Notice to Plaintiffs indicating that it had reached a preliminary conclusion that Plaintiffs had violated various sections of the Investment Advisers Act.

22.     Plaintiffs provided a written submission in response to the SEC's Wells Notice, setting forth the reasons why such charges would be inappropriate and unwarranted, and why the evidence contradicted the staff's theory.  In a supplemental submission, Plaintiffs explained why any enforcement proceeding authorized by the Commission should be conducted in U.S. District Court, rather than in a constitutionally deficient administrative proceeding.  The next day, on March 30, 2015, the Commission, by an unusual three-two vote, issued an OIP and initiated an administrative proceeding against Plaintiffs.

23.     In the OIP, the Commission ordered that a public hearing for the taking of evidence be convened within 60 days before an SEC ALJ.  It further ordered that the SEC ALJ issue an initial decision within 300 days addressing whether the allegations in the OIP are true;

what if any remedial action is appropriate and in the public interest; and whether Plaintiffs should be subject to injunctive relief and ordered to pay civil monetary penalties and disgorgement.

24.     Two days after the Commission issued the OIP, Ms. Tilton brought a constitutional challenge to the administrative enforcement proceeding in the Southern District of New York.[7]  Ms. Tilton sought to enjoin the proceedings and requested a declaratory judgment that the appointment scheme for the ALJs, who act as hearing officers, violates the Appointments Clause of the Constitution,[8] and that the limitations on the President's authority to remove ALJs violate separation of powers.[9]  The district court found that it lacked subject-matter jurisdiction and denied the motion for a preliminary injunction.[10]

25.     Ms. Tilton appealed to the Second Circuit, which stayed the SEC proceedings pending the outcome on appeal.[11]  On June 1, 2016, the Second Circuit affirmed the district court's dismissal of the suit for lack of subject-matter jurisdiction.  After further briefing, the Second Circuit clarified that its stay of the administrative proceedings would remain in place until July 6, 2016.[12]  The stay has since been lifted, and the administrative proceeding has re-commenced, with the hearing scheduled to begin on October 24, 2016.

**The SEC's Pattern And Practice Of Denying Respondents Due Process In Administrative Proceedings**

26.     In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") "dramatically expanded" the SEC's authority to impose monetary civil penalties

---

[7]   Compl., *Tilton v. SEC*, No. 15-cv-2472, 2015 WL 1501674 (S.D.N.Y. Apr. 1, 2015) (Dkt. 1).
[8]   *See* U.S. Const., art II., § 2, cl. 2.
[9]   *See id*. § 1.
[10]  Opinion & Order, *Tilton v. SEC*, No. 15-cv-2472, 2015 WL 4006165 (S.D.N.Y. June 30, 2015) (Dkt. 24).
[11]  Order, *Tilton v. SEC*, No. 15-2103 (2d Cir. Sept. 17, 2015) (Dkt. 77).
[12]  Order, *Tilton v. SEC*, No. 15-2103, 2016 WL 3084795 (2d Cir. June 28, 2016) (Dkt. 125).

on unregistered persons and entities by permitting the SEC to seek such penalties via in-house, administrative proceedings.[13]  This new authority was a significant change from the SEC's prior regime, in which the agency was required to seek civil penalties from unregistered persons and entities in federal district court and often before a jury.  Under the new regime, a far greater number of people became subject to the SEC's unconstitutional pattern and practice of denying respondents due process in administrative proceedings.

27.    The SEC's Rules of Practice governing such proceedings lack the traditional hallmarks of a fair trial in federal courts and afford respondents significantly fewer procedural protections than those provided in federal court by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Until the SEC's recent amendments to its Rules of Practice,[14] for example, the Rules did not allow an ALJ to grant respondents' requests to take depositions for discovery purposes unless the ALJ found that it was "likely" that "the prospective witness w[ould] . . . be unable to attend or testify at the hearing because of age, sickness, infirmity, imprisonment or other disability."[15]  Although the Commission had authority to deviate from this requirement in the "interests of justice,"[16] Plaintiffs have found no instances in which the Commission has exercised this discretion to grant requests for depositions absent a showing that a witness would be unavailable to testify at the hearing.

28.    By contrast, the Division routinely seeks to introduce transcripts of investigative testimony obtained where counsel for respondents were not permitted to object, cross examine, or even be present, despite the availability of those witnesses to attend and testify at the hearing.

---

[13]  *Tilton v. SEC*, 824 F.3d 276, 279 (2d Cir. 2016).
[14]  81 Fed. Reg. 50,212.
[15]  17 C.F.R § 201.233(b) (2016).
[16]  *Id*. § 201.100(c).

And the Commission permits the introduction of these transcripts as evidence in administrative proceedings, despite the availability of those witnesses to attend and testify at the hearing.[17]

29.      SEC administrative proceedings, moreover, run on notoriously truncated timelines that are inappropriate for complex proceedings seeking to impose severe, quasi-criminal penalties.  Under the most extended schedule permitted under the SEC's Rules of Practice prior to their recent amendment, an ALJ is required to issue an initial decision within 300 days of the OIP—a requirement that was promulgated prior to Dodd-Frank's expansion of the SEC's power to seek civil penalties in administrative proceedings.[18]  To accommodate this timeframe, the Rules contemplate that the hearing will take place just four short months after the SEC issues an OIP, regardless of the amount of time the SEC takes to investigate the case or the complexity of the proceedings.

30.      In addition, while the SEC has assumed discovery obligations comparable to those that apply to the federal government in criminal prosecutions under *Brady v. Maryland*, 373 U.S. 83 (1963), numerous commentators have observed that the Division regularly construes those obligations narrowly and delays in turning over exculpatory evidence.  Commentators have also noted that, "[d]uring their investigations, SEC investigators will elicit witness statements through ambush calls and informal interviews," "[b]ut because nearly all of the SEC's investigators are lawyers, the SEC will refuse to disclose the memoranda or notes of these statements, claiming that they are protected by the work product doctrine."[19]  In Plaintiffs'

---

[17]  *See, e.g., Del Mar Fin. Servs., Inc.*, Securities Act Release No. 8314, 2003 WL 22425516, at *8-9 (Oct. 24, 2003) (Op. of Comm'n).

[18]  17 C.F.R. § 201.360(a)(2).

[19]  *See, e.g.,* Randall R. Lee & Timothy C. Perry, *A 'Cop on the Beat'?: Why the SEC Should Adopt the* Brady *Standard*, Bloomberg BNA (Jan. 27, 2015); Stephen A. Best et al., *Imposing* Brady-*Like Obligations on the SEC?*, Insights:  The Corporate & Securities Law Advisor (June 2014).

proceeding, for instance, the Division has taken the position that it is "not required" to "produce to Respondents handwritten notes of any . . . interviews with investors the Division conducted during the investigation."[20]

31.     Given the lack of meaningful discovery tools, the limited procedural protections, and the exceedingly abbreviated timeframe afforded to respondents to prepare a defense in SEC administrative proceedings, it should come as no surprise that "the SEC has reportedly prosecuted an increasing number of cases through administrative proceedings, with a rate of success notably higher than it has achieved in federal district courts."[21]  One article reported that between October 2010 and March 2015, the SEC had a 90% victory-rate in contested cases heard by ALJs, compared to a 69% success rate in cases the SEC brought in federal court.[22]  In fiscal year 2013, for example, the Division won all six of its litigated administrative proceedings, but only 11 of 18 federal court trials.[23]  This disparity in results is not surprising, as the Division has reportedly admitted that in deciding whether to bring a case administratively or in federal court, the agency considers "whether the case would play well before a jury."[24]

32.     The SEC's procedures and practices have also led to increased public scrutiny of agency proceedings, including by respected federal jurists like Judge Jed S. Rakoff.[25]  Concerns about the fairness of the SEC's authority to choose unilaterally to pursue millions of dollars in

---

[20]   Div.'s Br. in Opp'n to Resp'ts' Mot. for a More Definite Statement at 7, *Tilton*, No. 3-16462 (SEC Apr. 29, 2015).

[21]   *Tilton*, 824 F.3d at 279 (citing Jean Eaglesham, *In House Judges Help SEC Rack Up Wins*, Wall St. J., May 7, 2015, at A1).

[22]   *See* Jean Eaglesham, *SEC Trims Use of In-House Judges*, Wall St. J. (Oct. 11, 2015), http://www.wsj.com/articles/sec-trims-use-of-in-house-judges-1444611604.

[23]   *See* Jean Eaglesham, *SEC Steering More Trials to Judges It Appoints: Unpublished Figures Show 'Win' Rate for Cases Heard by Administrative Law Judges*, Wall St. J. (Oct. 21, 2014), http://www.wsj.com/articles/sec-is-steering-more-trials-to-judges-it-appoints-1413849590.

[24]   *See* Yin Wilczek, *SEC to Pursue More Insider Trading Cases in Administrative Forum, Director Says*, Bloomberg BNA Corporate Law and Accountability Report (June 13, 2014), http://www.bna.com/sec-pursue-insider-n17179891282.

[25]   *See generally, e.g.*, Judge Jed S. Rakoff, Keynote Address Before the Practising Law Institute:  Is the S.E.C. Becoming A Law Unto Itself?  (Nov. 5, 2014).

civil penalties via administrative proceedings prompted former SEC Commissioner Joseph

Grundfest to argue before Congress that respondents should be allowed to remove a suit filed

administratively to federal court, "where defendants have the right to a jury trial, can take

deposition testimony, testimony is subject to the Federal Rules of Evidence, and judges are

entirely independent of the agency and have been nominated by the President and confirmed by

the United States Senate."[26]  The House Committee on Financial Services recommended

legislation implementing a removal option in July, and the bill awaits a vote of the full House.[27]

33.     This complaint challenges the SEC's systemic failure to respect basic

constitutional safeguards and principles of fairness that are ingrained in the laws governing civil

judicial proceedings in the United States.  On information and belief, the SEC has engaged in a

pattern and practice of denying respondents in administrative proceedings a fair opportunity to

develop and present their defenses in violation of their due process rights.[28]  The SEC does so

through an assortment of policies and practices in administrative proceedings that tilt the playing

field irrevocably in its own favor.

### *The SEC Has A Pattern And Practice Of Delaying Formal Charges In Support Of Its Investigations, Then Forcing Respondents To A Truncated Timeline To Prepare Their Defense.*

34.     Even before formal charges are brought in an administrative proceeding,

respondents are already at a severe disadvantage due to the Division's practice of taking years to

complete its investigation and commence administrative proceedings (bound only by the five-

year statute of limitations under 28 U.S.C. § 2462).  During this period, the SEC has

---

[26]  *See Legislative Proposals to Improve the U.S. Capital Markets:  Hearing on H.R. 3798, et al., Before the House Subcommittee on Capital Markets and Government Sponsored Enterprises*, 114th Cong. 7 (2015) (statement of Hon. Joseph Grundfest).

[27]  *See* H.R. Rep. No. 114-697, at 1 (2016).

[28]  *See* Stephen A. Best *et al.*, *Imposing* Brady-*Like Obligations on the SEC?*, Insights:  The Corporate & Securities Law Advisor (June 2014).

extraordinary power to develop the investigative record as it chooses, subpoenaing documents and testimony, and taking information from witnesses on and off the record.  While staff in the investigation unit conduct the investigation, the investigation staff frequently includes members of the trial unit as well.[29]  This gives trial counsel ample time to begin understanding and preparing a factually complex case for hearing, while respondents are given comparatively little time—often only a matter of months—to prepare their defense.[30]

35.    This timetable puts respondents at a serious disadvantage.[31]  This is not the first time that respondents before the Commission have argued that the Division's tactics unfairly constrain their ability to defend themselves.[32]  Witnesses' memories fade, witnesses become unavailable, and documents not subpoenaed by staff in the course of their investigation may no longer be preserved by third parties by the time respondents can seek their own subpoena.  While the Division builds its case, respondents may lose access to relevant witnesses and exculpatory

---

[29]   Indeed, one of the Division's lawyers who will be trying its case against Plaintiffs was involved in the investigation and was present at Ms. Tilton's June 2014 investigative testimony.

[30]   *See generally, e.g.*, *Phillip Cory Roberts*, Exchange Act Release No. 31865, 2015 WL 5834034 (Oct. 7, 2015) (Op. of Comm'n) (OIP filed less than 4 months prior to expiration of statute of limitations in case alleging violations based on failure to register as broker in financing reverse mergers of Chinese companies); *Chariot Advisors*, Exchange Act Release No. 3653, 2013 WL 4455433 (Aug. 21, 2013) (Op. of Comm'n) (OIP filed less than one year prior to expiration of statute of limitations in case alleging fraudulent misrepresentations of investment services); *Steven A. Cohen*, Investment Advisers Act Release No. 3634, 2013 WL 3776681 (July 19, 2013) (Op. of Comm'n) (OIP filed 2 months prior to expiration of statute of limitations in case alleging failure to properly supervise); *Mohammed Riad*, Exchange Act Release No. 3521 (Dec. 19, 2012) (OIP filed 10 months prior to expiration of statute of limitations in case alleging defrauding investors by failing to disclose put option and variance swap strategies); *Wendy McNeeley*, Exchange Act Release No. 68431, 2012 WL 6457291 (Dec. 13, 2012) (Op. of Comm'n) ("The OIP against McNeeley was filed nearly five years after completion of the [alleged violation.]").

[31]   *See* 17 C.F.R. § 201.360(a).

[32]   *See Timbervest, LLC*, Initial Decision Release No. 658, 2014 WL 4090371, at *62 (ALJ Aug. 20, 2014) ("Timbervest argues that the passage of time has damaged its ability to defend itself. . . .  Admittedly, witnesses' memories have faded since 2002, when Shapiro and Boden entered into the fee agreement, and even 2005, when Shapiro conveyed something about that fee agreement to Schwartz."); *see also Sharon M. Graham*, Exchange Act Release No. 34-40727, 1998 WL 823072, at *10 (Nov. 30, 1998) (Op. of Comm'n) ("Respondents also complain that the conduct at issue occurred in 1989 and 1990, and this proceeding was instituted in 1994.  They claim that the passage of time has hampered their ability to defend.  Voss claims, for example, that he could not identify a third party who was present at the April 1990 lunch with Broumas and who could confirm that Voss and Broumas did not discuss Broumas' trading or financial situation.").

documents.  Moreover, the passage of time may diminish the quality of testimony based on witness recollections.

36.     And while the SEC may take years to investigate its targets using a variety of broad and invasive discovery tools, the SEC Rules—prior to the Commission's recent amendments—set a 300-day deadline for the ALJ to issue an initial decision on the allegations found in an OIP regardless of the complexity of the case, which in turn severely compresses the time available for respondents to mount a defense.[33]  The Commission has often justified the rapid schedule required under Rule 360 by the need to protect the investing public.[34]  But this purported justification rings hollow when it takes the Commission years to institute proceedings. If the purported threat justifies urgency, then urgent action should be demanded of both the SEC and respondents.

### *The SEC Has A Pattern And Practice Of Supplying Respondents With Insufficient Notice Of The Charges Against Them.*

37.     Once it decides to bring charges, the SEC further presses its advantages over respondents in preparing its OIPs.  It is well established that due process requires that individuals subject to government action be sufficiently informed of the charges against them so that they may adequately prepare their defense, a principle that applies with equal force in administrative proceedings.  Rule 200(b) of the SEC's Rules of Practice states that the OIP "shall set forth the factual and legal basis alleged therefor in such detail as will permit a specific response thereto."[35]

---

[33]  The Commission, for instance, denied Plaintiffs' request to apply the Amended Rules of Practice to their proceeding.  *See* Order Denying Pet. Interlocutory Review & Pet. to Apply Comm'n's Am. Rules of Practice, Admin. Proc. File No. 3-16462 (SEC Aug. 24, 2016).
[34]  81 Fed. Reg. at 50,214.
[35]  17 C.F.R. § 201.200(b).

However, on information and belief, the Commission frequently declines to provide adequate notice of charges and potential penalties in its OIPs.

38.     Based on a review of cases illustrating past practices of the SEC, the Division's own statements, and on information and belief, the SEC has previously refused to identify the Securities Act provisions it alleged were violated, the investors allegedly defrauded, or the transactions at issue.[36]  Instead, the SEC has staked out the position that "motions for more definite statements seeking details on, for example, which precise investors were the recipients of respondent's misrepresentations are historically disfavored and routinely denied."[37]  The SEC has also attempted to bring last-minute sanctions against respondents, long after the OIP was issued, including demands for disgorgement[38] and imposition of the officer-and-director bar.[39]  To be sure, there are a handful of instances in which the ALJ or the Commission has corrected a failure to include sufficiently detailed allegations in an OIP.  But ALJs have also repeatedly condoned the SEC's withholding of essential information without regard for the respondents' due process right to notice.  On information and belief, the SEC has made no attempt to rectify

---

[36]  In *Harding Advisory LLC*, Admin. Proceedings Rulings Release No. 1239, 2014 WL 10937672 (ALJ Feb. 12, 2014), the respondents filed a Motion for a More Definite Statement requesting information on what Securities Act provisions were violated, how other sections of the Securities Act were violated, which investors were defrauded, what level of scienter was being alleged and other requests.  The respondents explained that the OIP failed to put the respondents on notice of the claims against them.  The ALJ denied their request.

[37]  Division's Br. in Opp'n to Resp'ts' Mot. for a More Definitive Statement, *Tilton*, Admin. Proceeding File No. 3-16462 (SEC Apr. 30, 2015).

[38]  In *Kent T. Black*, Securities Act Release No. 8033, 2001 WL 1511600, at *4-5 (ALJ Nov. 14, 2001), the Division attempted to seek disgorgement without giving notice in the OIP that it would do so.  The ALJ found that "[t]he OIP did not provide [the respondent] adequate notice that disgorgement of any amount, much less $485,558, would be sought in this administrative proceeding. . . .  I find it fundamentally unfair to impose a disgorgement sanction upon a defaulting respondent without notice of the threat of such a sanction." *Id.*

[39]  In *Michael W. Crow*, Initial Decision Release No. 953, 2016 WL 489352, at *73 (ALJ Feb. 8, 2016), the Division failed to provide notice that an officer-and-director bar would be sought against the respondent in either the OIP or at the hearing itself.  It was not until the post-hearing brief that the Division mentioned this severe sanction.  The ALJ denied the sanction because of the inadequacy of the notice.

its pattern of inadequate charging with internal rules or policy instructions to investigative and enforcement staff.

### *The SEC Has A Pattern And Practice Of Using Discovery And Evidentiary Rules To Skew Proceedings In Its Favor, To The Detriment Of Respondents.*

39.     The inequities described above are only exacerbated when the Division presents its case against respondents.  Despite the truncated timeframe afforded to respondents to prepare their defense, the SEC often delivers voluminous and disorganized investigative files to respondents without providing them sufficient time to properly dissect these materials and prepare their case.[40]  And the SEC's disclosures of key materials, including witness lists, exhibit lists, and other materials needed to prepare for a hearing, are regularly untimely and incomplete.[41]

40.     Instead of following the Federal Rules of Evidence, which prohibit the use of problematic or unreliable forms of evidence, the SEC Rules do not contain such prohibitions.  As such, ALJs may admit evidence that would typically be excluded under the Federal Rules, almost

---

[40]   *See* Resp'ts' Reply Br. in Further Supp. of their Due Process Claims at 2, *Harding Advisory LLC*, Admin. Proceeding File No. 3-15574 (SEC Jul. 17, 2015) (explaining that respondents were given four months to review 22 million documents and prepare for a hearing); *John Thomas Capital Mgmt. Grp.*, Securities Act Release No. 9492, 2013 WL 6384275, at *5-6 (Dec. 6, 2013) (Op. of Comm'n) (refusing to require the SEC to provide a "roadmap" or other relief to respondents when they claimed they had inadequate time to review the 700 gigabytes of data produced by the SEC in advance of the hearing); *Gregory M. Dearlove*, Exchange Act Release No. 57244, 2008 WL 281105, at *34 (Jan. 31, 2008) (Op. of Comm'n) ("[Respondent] contends that, had he been afforded adequate time to prepare, he would have uncovered Helms's testimony among the mass of material provided to him [millions of pages of documents by the SEC], which would have refuted the law judge's finding."); Resp'ts' Pet. for Review at 16-17, *John Thomas Capital Mgmt. Grp.*, No. 3-15255 (SEC Nov. 7, 2014) (claiming inadequate time to review the materials provided by the SEC in preparation for the hearing and, in particular, cross-examination of a witness).

[41]   *See, e.g.*, *Dearlove*, Exchange Act and Accounting and Auditing Enforcement Act Release No. 2779, 92 SEC Docket 1427 (Jan. 31, 2008) (Op. of Comm'n) ("Dearlove additionally contends that the task of preparing for the hearing 'was made more difficult by the Division's late production of adequate witness and exhibit lists, and its eleventh-hour inclusion of allegations not specified in the OIP.'"); Resp'ts' Mot. Leave to Adduce Additional Evid., *OptionsXpress, Inc.*, No. 3-14848 (SEC Jan. 14, 2015) (claiming that the SEC failed to provide respondents with material information concerning a pending investigation against a witness, prior to the hearing, under *Brady*); Resp'ts' Pet. Review, *John Thomas Capital Mgmt. Grp.*, No. 3-15255 (SEC Nov. 7, 2014) (contesting the ALJ's decision to allow the Division to call a witness who was not on the Division's witness list or known to the respondents beforehand).

uniformly to the detriment of respondents in SEC administrative proceedings.[42]  The SEC, for

example, may rely on hearsay evidence that would be inadmissible even in bench trials in other

courts.[43]  The threat that the record is tainted with unreliable evidence as a result, even where the

fact finder is an ALJ, is compounded given constraints on respondents' ability to develop and

present a defense, either affirmatively or by cross examination.

41.     Similarly, on information and belief, the Division employs experts who weave

legal conclusions into their analysis of the facts—or even in lieu of an analysis of the facts.  Such

experts, who have been repeatedly excoriated in federal district court proceedings,[44] are a ready

resource for the SEC in administrative proceedings, where the bar for relevance, despite the

---

[42]  *See, e.g.*, Resp'ts' Additional Submission, *John Thomas Capital Mgmt. Grp.*, Admin. Proceeding File No. 3-15255 (Feb. 18, 2015) (Op. of Comm'n) (listing improper evidentiary and procedural rulings of ALJ); Resp'ts' Pet. Review 19-26, *John Thomas Capital Mgmt. Grp.*, No. 3-15255 (SEC Nov. 7, 2014) (claiming that the ALJ improperly admitted evidence in violation of evidentiary rules, among other things).

[43]  *See, e.g.*, *Donald T. Sheldon*, Admin. Proceeding Rulings Release No. 275, 52 SEC Docket 436, at *2 (ALJ Mar. 19, 1987) ("As the Commission has stated on a number of occasions, 'the technical hearsay rules are not applicable to [SEC] administrative proceedings which favor liberality in the admission of evidence . . . . [A]ll evidence which 'can conceivably throw any light upon the controversy' should normally be admitted in such proceedings." (quoting *Allessandrini & Co., Inc.*, Exchange Act Release No. 10466, 45 S.E.C. 399, at *8 (1973) (Op. of Comm'n); *Del Mar Fin. Servs., Inc.*, Securities Act and Exchange Act Release No. 8314, 81 SEC Docket 1195, at *8 (Oct. 24, 2003) (Op. of Comm'n) (rejecting the Division's challenge to exclude certain testimony because the court "ha[s] stated on numerous occasions that the Federal Rules of Evidence, including the rules on hearsay, are not applicable to our administrative proceedings which favor liberality in the admission of evidence.  Under the Commission's Rule of Practice 320, a law judge may receive all relevant evidence and shall exclude evidence that is irrelevant, immaterial, or unduly repetitious.  Moreover, in deciding when to admit and whether to rely on hearsay evidence, its probative value, reliability, and the fairness of its use must be considered.  In doubtful cases, we have expressed a preference for inclusiveness." (footnotes omitted)).

[44]  *See, e.g.*, *SEC v. Tourre*, 950 F. Supp. 2d 666, 681-82 (S.D.N.Y. 2013) (finding SEC's expert was attempting to act as a "conduit for a factual narrative," purporting to "'find[] facts' that [we]re in contention," and opining on "legal conclusion[s]" that were "not proper expert testimony"); *SEC v. Das*, No. 8:10-cv-102, 2011 WL 4375787, at *10 (D. Neb. Sept. 20, 2011) ("[Dr. Henning] will not . . . be permitted to opine as to whether such disclosures or omissions were *materially* false or *misleading*."); *Levinson v. Westport Nat'l Bank*, 3:09-cv-269, 2013 WL 3280013, at *1 (D. Conn. June 27, 2013) (finding that Dr. Henning's testimony "impermissibly reaches legal conclusions, usurps the role of the Court in instructing the jury, and usurps the role of the jury in interpreting the governing [agreements]").

SEC's ostensible adoption of the standards in *Daubert v. Merrell Dow Pharmaceuticals*, 509

U.S. 579 (1993),[45] is extremely low.[46]

### The SEC Has A Pattern And Practice Of Resisting Respondents' Efforts To Obtain Exculpatory Material.

42.     Although the SEC can take years to investigate respondents and interview

witnesses before the Commission issues an OIP that fails to detail all of the salient allegations,

the SEC's Rules of Practice make it extremely difficult for respondents to obtain evidence

necessary to meaningfully rebut the SEC's case in chief.  For instance, the SEC does not afford

respondents the full panoply of rights to which they are entitled under *Brady v. Maryland* and its

progeny.

43.     The SEC holds itself out as a "law enforcement" agency, "prosecuting" securities

cases and working "closely with law enforcement . . . to bring criminal cases."[47]  The SEC,

moreover, has the authority to seek quasi-criminal remedies ranging from harshly punitive fines

to permanent bars against directors, officers, and securities industry participants.

44.     SEC Rule of Practice 230 states that the SEC may not "withhold, contrary to the

doctrine of *Brady v. Maryland*, documents that contain material exculpatory evidence."[48]  As a

result, there can be no dispute that the *Brady* canon and its progeny apply to SEC enforcement

proceedings and require the Division to produce exculpatory and impeachment materials.  This

obligation, which applies to SEC enforcement attorneys and prosecutors alike, is a cornerstone of

a defendant's right to receive a fair trial.

---

[45]  *See Ralph Calabro*, Securities Act, Exchange Act, and Investment Company Act Release No. 9798, 2015 WL 3439152, at *11 & n.67 (May 29, 2015) (Op. of Comm'n).

[46]  *See* Order, *Tilton*, Admin. Proceedings Rulings Release No. 4118 (ALJ Sept. 1, 2016) (holding that concerns about repeatedly rejected experts were insufficient, as the Federal Rules of Evidence were inapplicable, the "Commission's standard of relevance is very low," and this was a bench trial).

[47]  *About the SEC*, U.S. Sec. & Exch. Comm'n, http://www.sec.gov/about/whatwedo.shtml (last visited Sept. 8, 2016).

[48]  17 C.F.R. § 201.230.

45.     Nonetheless, the SEC employs a watered-down version of the *Brady* doctrine and has strenuously resisted efforts by the defense bar to harmonize the SEC's *Brady* practices with those of the U.S. Department of Justice and other prosecutors so as to provide respondents with their full rights under *Brady*.  Guidance regarding the timing and nature of SEC enforcement lawyers' obligations to turn over exculpatory and impeachment materials under *Brady* is nowhere to be found in the SEC Enforcement Manual.[49]

46.     Although ALJs sometimes correct *Brady* violations by the Division,[50] the Division continues to decline to turn over exculpatory materials in administrative proceedings.[51] The SEC's continued resistance to full-fledged *Brady* compliance imperils the due process rights of respondents who find themselves the subject of an SEC ALJ proceeding.  The SEC's current, watered-down *Brady* practices deny respondents one of the most basic protections afforded criminal defendants.  Furthermore, litigants forced onto the uneven field of play that is the SEC administrative process are at a stark disadvantage when a suspected *Brady* violation has

---

[49]   *See generally* SEC Div. of Enforcement Manual, Office of Chief Counsel (June 4, 2015); *see also* Paul S. Atkins & Bradley J. Bondi, *Evaluating the Mission:  A Critical Review of the History and Evolution of the SEC Enforcement Program*, 13 Fordham J. Corp. & Fin. L. 367, 411-12 (2008) (advocating for a "written and uniform 'full-disclosure' policy for [SEC] enforcement matters").

[50]   *See, e.g.*, *Delaney II*, Admin. Proceedings Rulings Release No. 1652, 109 SEC Docket 2282, at *4 (ALJ July 25, 2014) (requiring the Division to provide a statement summarizing measures taken to comply with *Brady* despite the Division's disagreement with the respondents' contention that "'anything in the notes that is not inculpatory must necessarily be exculpatory'" or that it "must produce anything that 'might generate a lead for [respondent] to pursue'"); *J. Kenneth Alderman*, Admin. Proceedings Rulings Release No. 754, 105 SEC Docket 3078, at *7-8 (ALJ Feb. 28, 2013) (requiring the Division to provide an affidavit detailing efforts taken to comply with *Brady* despite the Division's claimed compliance with the doctrine and claims that materials requested related to a separate investigation); *City of Anaheim*, Admin. Proceedings Rulings Release No. 586, 70 SEC Docket 668 (ALJ July 30, 1999) (rejecting the Division's claimed compliance with *Brady* when they provided the court with documents, unsolicited, for *in camera* review and argued that documents requested under the doctrine had been discarded); *Orlando Joseph Jett*, Admin. Proceedings Rulings Release No. 503, 61 SEC Docket 2423 (ALJ May 14, 1996) (requiring the Division to provide materials to the ALJ for *in camera* review under *Brady* despite the Division's claim that doing so was against policy considerations and would lead to "dangerous" precedent that could damage the Division's enforcement program).

[51]   *See, e.g.*, Initial Br. Pet'rs 26-27, *Timbervest, LLC v. SEC*, No. 15-1416, 2016 WL 1614428 (D.C. Cir. Apr. 22, 2016) (Doc. 1610054) (arguing that "[a]lthough its rules required otherwise, the SEC produced no documents, notes, or emails that it identified as *Brady* material," and noting that the SEC later "inadvertently produced the emails" containing exculpatory evidence).

occurred.  When the Division baldly asserts it has complied with *Brady*, respondents in an SEC administrative proceeding have little ability to test the Division's assertions, and the SEC's ALJs have shown little willingness to question what standard is being applied by the Division for determining whether materials should be produced as exculpatory or impeachment information, let alone to examine the diligence of the SEC's search for such materials.[52]  Meanwhile, despite the immediate detrimental effect that the SEC's failure to produce documents to respondents has on their ability to rebut the SEC's claims, interlocutory Commission review is applied "sparingly," and has been denied even in cases in which the Division has overlooked exculpatory evidence or failed to timely provide its investigative file to respondents.[53]  As a result, respondents in administrative proceedings do not obtain the kind of potentially exculpatory and impeachment material they can obtain under *Brady* in federal criminal proceedings.[54]

47.      Yet, such material is essential in these proceedings.  Once before an ALJ, the SEC enjoys advantages unknown to litigants in federal court.  With quasi-prosecutorial power and the ability to wield uniquely broad claims of deliberative process privilege and work product protection, the SEC is the proverbial Goliath to the civil defendant's David.  This disparity is all

---

[52]  *See, e.g., Jett*, Admin. Proceedings Rulings Release No. 514, 1996 WL 360528, at *1 (1996) (interlocutory order addressing procedure to be followed under Rule 230(b)(2)) ("Unless defense counsel becomes aware that exculpatory evidence has been withheld and brings it to the judge's attention, the government's decision as to whether or not to disclose information is final.  Mere speculation that government documents may contain *Brady* material is not enough to require the judge to make an in camera review.  In order to justify such a review, a respondent must first establish a basis for claiming that the documents contain material exculpatory evidence.  A 'plausible showing' must be made that the documents in question contain information that is both favorable and material to the respondent's defense.").

[53]  *See* 17 C.F.R. § 2010.400(a); *John Thomas Capital Mgmt. Grp.*, Securities Act, Exchange Act, Investment Advisers Act, and Investment Company Act Release No. 3733, 107 SEC Docket 4066 (Dec. 6, 2013); *Hall*, Release No. 2627, 90 SEC Docket 2819 (June 29, 2007).

[54]  *See Michael J. Fee*, Admin. Proceedings Rulings Release No. 318, 52 SEC Docket 470, at *3 (Mar. 1, 1989) (detailing how the *Brady* doctrine applies differently in administrative proceedings) ("It is evident that a number of the contentions made by respondent urging a very broad construction and application of *Brady* would, if accepted, enable them to convert the *Brady* doctrine into a vehicle for broad-ranging prehearing discovery, thus avoiding the restrictions of the more limited prehearing disclosures afforded by the Commission's Practice Rules (Rule 8(d)).").

the more pressing in administrative proceedings, in which a respondent is hoping for due process

with the knowledge that the entity that chose to charge him will have the authority to overturn

any decision of the ALJ on Commission review.

### The SEC Has A Pattern And Practice Of Arbitrarily And Reflexively Denying Respondents' Requests To Take Depositions Unless The Deponent Will Be Unavailable At The Hearing.

48.     The SEC also has a pattern and practice of restricting and hindering respondents'

ability to gather the information necessary for their defense more generally, by denying

respondents the opportunity to take depositions of potential witnesses in advance of the hearing

unless those witnesses will be unavailable at the hearing.  Federal courts allow depositions to

ensure a fair trial, avoid surprise, or for other good cause shown.  The Federal Rules of Civil

Procedure and Evidence, however, do not apply in SEC administrative proceedings.

49.     Congress has recognized the importance of allowing depositions in administrative

proceedings by providing under the Administrative Procedure Act ("APA") that an ALJ may

"take depositions or have depositions taken when the ends of justice would be served."[55]  This

statutory provision, however, does not apply in SEC administrative proceedings.

50.     Instead, the SEC uses its own Rules of Practice.[56]  Unlike in federal courts, where

the taking of depositions is a matter to be arranged among the parties, under the SEC's Rules,

"[a]ny party desiring to take the testimony of a witness by deposition shall make a written

motion setting forth the reasons why such deposition should be taken."[57]

51.     Requesting a deposition from an ALJ for any other reason than the unavailability

of a witness, no matter how compelling, has been fruitless under the Commission's existing

Rules.  An ALJ may grant a deposition only if he or she finds that the prospective witness "will

---

[55]  5 U.S.C. § 556(c)(4) (2012).
[56]  *See* 17 C.F.R. § 201.100(a).
[57]  *Id.* § 201.233(a).

likely give testimony material to the proceeding; that it is likely the prospective witness, who is then within the United States, will be unable to attend or testify at the hearing because of age, sickness, infirmity, imprisonment, other disability, or absence from the United States . . . and that the taking of a deposition will serve the interests of justice."[58]  As a result of this rule, ALJs have, time and again, asserted that they are not "authorize[d]" by the Rules of Practice to order prehearing depositions for purposes of discovery, no matter how compelling the need.[59]

52.      This prohibition does not apply to the Division, which is permitted to take investigative testimony in advance of the hearing and then introduce it as evidence into the record.[60]

53.      The Commission is authorized to grant depositions to private parties.  The very *first* rule of the Rules of Practice is that "[t]he Commission, upon its determination that to do so would serve the interests of justice and not result in prejudice to the parties to the proceeding, may by order direct, in a particular proceeding, that an alternative procedure shall apply or that compliance with an otherwise applicable rule is unnecessary."[61]  On information and belief, although the Commission has discretion to grant depositions more broadly if "to do so would serve the interests of justice," the Commission has consistently denied requests for depositions regardless of any individual circumstances, the hardship involved, or prohibitive costs.  Instead,

---

[58]  *Id.* § 201.233(b).
[59]  *Securities and Exchange Commission Rules of Practice*, 60 Fed. Reg. 32,738, 32,765 (June 23, 1995); *see also Clean Energy Capital LLC*, Admin. Proceedings Rulings Release No. 1637, 109 SEC Docket 2272, at *4 (ALJ July 22, 2014); *Delany II*, Admin. Proceedings Rulings Release No. 1652, 109 SEC Docket 2282, at *5 (ALJ July 25, 2014) (denying joint request for subpoena despite witness having Parkinson's); *Daxor Corp.*, Admin. Proceedings Rulings Release No. 666, 100 SEC Docket 1750, at *3-4 (ALJ Feb. 24, 2011) (denying deposition for witness despite "exceptional circumstances" and showing that testifying would be an "extreme burden" for the witness); *David Henry Disraeli*, Securities Act, Exchange Act, and Investment Advisers Act Release No. 8824, 91 SEC Docket 24 (July 11, 2007).
[60]  *Del Mar Fin. Servs., Inc.*, 2003 WL 22425516, at *8-9.
[61]  17 C.F.R. §201.100(c).

the Commission routinely explains its "intention that any depositions will be taken prior to a hearing in lieu of, rather than in addition to, testimony given at a hearing, and will be the exception to the usual rule that witnesses will provide testimonial evidence at the hearing."[62]

54.     The SEC's regulatory scheme contemplates that the Commission will balance competing interests and exercise judgment on a case-by-case basis.[63]  Indeed, Rule 300 of the Rules of Practice expressly provides that "[a]ll hearings [for the purpose of taking evidence] shall be conducted in a fair, impartial, expeditious and orderly manner."[64]  Yet the Commission declines to exercise its discretion, and instead abuses that discretion by preventing respondents in administrative proceedings from taking depositions, even where such depositions are necessary for them to fairly and fully present their defense, and even where the Division is permitted to take investigative testimony in advance of the hearing and introduce it as evidence on the record.

55.     The SEC's policy is an arbitrary, capricious, and unlawful departure from the "interests of justice" standard governing SEC administrative proceedings.  While the Commission has discretion to determine what is in the interests of justice, here, the Commission exercises no discretion at all.  It simply cannot be the case that *no* depositions are ever warranted in the interests of justice or necessary for a "fair" and "impartial" proceeding, particularly where the Division is permitted to take investigative testimony prior to the hearing and irrespective of whether a witness will be available at the hearing.  Instead of acknowledging and seeking to mitigate this asymmetry, the SEC simply ignores the appropriate standard and any individualized

---

[62]  *Disraeli*, Securities Act Release No. 8824, Exchange Act Release No. 56045, Investment Advisers Act Release No. 2618, 91 SEC Docket 24, at *1 (July 11, 2007) (Op. of Comm'n); *Christiana Sec. Co.*, Investment Company Act Release No. 8615, 1974 WL 161445 (Dec. 13, 1974) (Op. of Comm'n) (affirming ALJ's denial of depositions).

[63]  *See* 17 C.F.R. § 201.100(c); *see also* 5 U.S.C. § 556(c)(4).

[64]  17 C.F.R. § 201.300.

evidence presented by respondents as a matter of course, failing to provide them with a fair opportunity to present their defenses in violation of their due process rights.

**_All Of These Patterns And Practices Violate The Due Process Rights Of Respondents In SEC Administrative Proceedings By Denying Them The Opportunity To Prepare A Meaningful Defense._**

56.     Each of the practices and policies described above is not challengeable under any provision of the SEC's administrative scheme.

57.     As detailed above, there are significant private interests at stake in administrative proceedings, where the SEC can impose severe sanctions, including a permanent bar from the industry and civil penalties in the many millions of dollars.  The lack of procedural protections afforded to respondents in administrative proceedings creates an unwarranted risk of erroneous deprivation of respondents' property and liberty interests.

58.     As a result of the above-described patterns and practices of the SEC, respondents in SEC administrative proceedings are denied adequate notice of the charges against them and lack sufficient time, discovery, and opportunity to obtain critical evidence and prepare their defense.  These practices further prevent the development of an adequate record for review on appeal.  Nor can these policies be justified by concerns for efficiency or minimizing the burden on SEC staff.  As noted above, the SEC can take years before even beginning these proceedings. Requiring the SEC to allow respondents in ongoing administrative proceedings sufficient time and opportunity to prepare their defenses, by contrast, would constitute only a minimal burden on the SEC.

**_Conduct By The Commission And Its In-House ALJ in Plaintiffs' Administrative Proceedings Is Illustrative Of The Unconstitutional Patterns And Practices Described Above._**

59.     Plaintiffs have been personally injured by these unconstitutional patterns and practices in their administrative proceeding.

60.     The SEC issued an OIP against Plaintiffs on March 30, 2015.  Consistent with the

Division's pattern and practice of failing to provide adequate notice of its charges in its charging

documents, Plaintiffs were forced to file a motion for a more definite statement of fact because

the OIP in their case left them uncertain as to the scope of critical factual allegations.  Despite

the Division's multi-year investigation of Plaintiffs and its collection of millions of pages of

documents produced by Plaintiffs and myriad third parties, the OIP does not allege which assets

the Division believes have been improperly categorized for indenture reporting purposes, nor

does it provide any information about which investors were purportedly misled.[65]

Notwithstanding that this information is critical to the preparation of Plaintiffs' defense, which

will turn in part on a highly fact-specific inquiry into the information and disclosures provided to

sophisticated investors, the Commission argued that Plaintiffs were not entitled to identification

of "(1) the specific assets that the Division alleges should have been downgraded and (2) the

specific investors who were misled."[66]

61.     The ALJ scheduled the evidentiary hearing to commence on October 13, 2015.

Plaintiffs moved to adjourn the trial date until December 1, 2015, in order to provide sufficient

time for the Second Circuit to rule on their constitutional challenge to the proceeding.  In

addition, Plaintiffs pointed out that the Final Witness List provided by the Division listed four

investor witnesses about whom there was no evidence in the Division's investigative file or other

discovery provided.[67]  Plaintiffs also requested additional time to obtain responsive documents

---

[65]  Mem. & Points of Authorities in Supp. Of Resp'ts' Mot. For a More Definite Statement, *Tilton*, No. 3-16462 (SEC Apr. 22, 2015).

[66]  *See* Div.'s Br. in Opp'n to Resp'ts' Mot. for a More Definite Statement 2-3, *Tilton*, No. 3-16462 (SEC Apr. 29, 2015).  "[I]n the spirit of cooperation," the Division nonetheless "provide[d] Respondents with a list of the portfolio companies it has focused on as a basis for the allegations in the OIP."  *Id.* at 4.

[67]  Resp'ts' Mot. to Adjourn the Trial 2, *Tilton*, No. 3-16462 (SEC Aug. 21, 2015).

through subpoenas issued to these witnesses.  The ALJ denied this request, and the Second

Circuit ultimately stayed the proceedings following oral argument.

62.     The stay was lifted on July 6, 2016.  Soon thereafter, the parties jointly requested

that the ALJ set a hearing date in December 2016.  However, despite the complexity of

Plaintiffs' case and the Division's exceptionally long investigation, the ALJ refused to schedule

the hearing for a date in December, as jointly proposed by Plaintiffs and the Division, which

would have permitted something approaching a reasonable time for Plaintiffs to review the

Division's investigative record and prepare their defense in this complicated dispute.  The ALJ

instead ordered the parties to suggest a date in September 2016, *ninety* days earlier.[68]

63.     Plaintiffs immediately moved for reconsideration of the order setting a September

2016 hearing date.  Consistent with Commission rules, Plaintiffs asked the ALJ to move the date

to December, as jointly requested by the parties, or, if she would not reset the hearing date, to

certify her decision for interlocutory review.  In the alternative, Plaintiffs requested that the ALJ

petition the Commission for an extension of the deadline for an initial decision in order to allow

the ALJ adequate time to consider all of the evidence and reach a thoroughly reasoned resolution

of the complicated issues raised by the OIP.  The ALJ then moved the hearing date to October

2016, but refused to reconsider her denial of the request for a December date, and refused to seek

an extension from the Commission notwithstanding that the SEC's Rules of Practice specifically

authorized this type of relief and that two of Plaintiffs' experts are not available for periods of

time immediately before and during the scheduled hearing in October.[69]  The ALJ's actions in

this regard are consistent with the Commission's general pattern and practice of requiring—

---

[68] *Tilton*, No. 3-16462, Admin. Proceedings Rulings Release No. 3990 (ALJ July 15, 2016).
[69] *Tilton*, No. 3-16462, Admin. Proceedings Rulings Release No. 4004 (ALJ July 20, 2016).

under the currently effective Rules of Practice—that ALJs issue initial decisions within 300 days of the issuance of the OIP regardless of the complexity of the case and the interests of justice.

64.     In the same order denying Plaintiffs' request to postpone the hearing and declining to petition the Commission for an exception to its 300-day rule, the ALJ warned Plaintiffs' counsel, *sua sponte*, that they should raise any "constitutional issues" on the record *without filing briefs* and that "filing further frivolous motions may subject counsel to sanctions or limits on the number of permissible filings," notwithstanding that counsel had filed only two related and plainly non-frivolous motions.[70]

65.     Plaintiffs then filed a petition directly to the Commission for an order setting a December 2016 hearing schedule, explaining that they had recently engaged new counsel who had to review millions of pages of documents before the hearing in October and emphasizing that the SEC had yet to produce documents material to their defense, including the names of three witnesses representing key institutional entities and interview notes for six witnesses, and that key witnesses, including multiple experts, were substantially unavailable for an October hearing.[71]  Plaintiffs also petitioned the Commission to apply the Amended Rules on the timing of hearings and discovery to Plaintiffs' case in the hopes of benefitting from the allowance for more time to issue an initial decision and the availability of depositions.  The Commission denied the petition on the ground that it "ha[d] already considered how the Amended Rules should apply to pending proceedings," without any consideration of whether the interests of justice called for a change in *these* proceedings.[72]  Accordingly, Plaintiffs have been denied

---

[70]   *Tilton*, No. 3-16462, Admin. Proceedings Rulings Release No. 4004 (ALJ July 20, 2016).
[71]   Resp'ts' Mem. of Law in Supp. of Expedited Pet. to the Commission 3-4, Tilton, No. 3-16462 (SEC July 25, 2016).
[72]   Order Denying Pet. for Interlocutory Review & Pet. to Apply the Commission's Am. Rules of Practice 8, *Tilton*, No. 3-16462 (ALJ Aug. 24, 2016).

depositions and sufficient time to prepare their defense consistent with the Commission's pattern and practice of declining to exercise its discretion to make depositions available in the interests of justice.

66.     In light of the compressed pre-hearing schedule, Plaintiffs also filed several motions to defend their due process rights in the administrative proceeding.  On August 26, 2016, Plaintiffs filed a motion in *limine* to strike portions of the Division's expert reports that— consistent with the Commission's repeated misuse of experts—purported to find facts that were in contention and opined on legal conclusions.  Only six days later, without even waiting for the Division to respond, the ALJ denied Plaintiffs' motion, holding that the Federal Rules of Evidence were inapplicable in administrative proceedings, the hearing was a bench trial, and the "Commission's standard of relevance is very low."[73]  The ALJ did not even address most of Plaintiffs' arguments, including that a purported "rebuttal" report went beyond the scope of the expert's initial report, that large swaths of the experts' reports were irrelevant or immaterial, and that the experts were "opining" on their own views of the facts even though numerous factual issues are in dispute.  The ALJ likewise ignored numerous federal court decisions that excluded the same type of testimony from the same proposed experts for precisely the reasons raised by Plaintiffs.[74]

67.     On August 31, 2016, Plaintiffs filed a separate motion in *limine* to exclude the Division's expert testimony on *Daubert* grounds due to their lack of qualification and unreliable methodology.  Again, without waiting for the Division to defend its experts and notwithstanding that multiple federal judges have excluded potential experts on these very grounds, the ALJ denied the motion "for the same reasons set forth" in its prior order.  The ALJ's order consisted

---

[73]  *Tilton*, No. 3-16462, Admin. Proceedings Rulings Release No. 4118 (ALJ Sept. 1, 2016).
[74]  *Supra* n.44.

of one sentence, with no reference to *Daubert* and without any reference to or acknowledgement of the fact that this *Daubert* motion raised an entirely different ground for excluding the expert witness testimony than Plaintiffs' prior request.[75]  In so doing, the ALJ effectively endorsed the SEC's pattern and practice of employing discovery and evidentiary rules and tactics that tilt the playing field irrevocably in the agency's favor.

68.     The ALJ also denied Plaintiffs' Motion in *Limine* to Preclude the Division from Seeking Disgorgement.[76]  Plaintiffs argued that the Division was impermissibly relying solely on unreliable and improper expert testimony to determine the amount of disgorgement.  The ALJ denied the motion in another terse two-paragraph order barely a day after it was filed, without even requiring a response from the Division.[77]  Moreover, a day after denying Plaintiffs' motion, the ALJ requested text searchable versions of the expert reports, suggesting that she will have considered the improper expert opinion before the hearing.

69.     In contrast with the ALJ's reflexive denials of Plaintiffs' motion to exclude the Division's experts, the ALJ still has not decided a separate motion, filed by Plaintiffs on August 21, 2016, and seeking to submit replacement expert reports because two of their experts are unavailable for periods of time before and during the ALJ's scheduled hearing.[78]

70.     In addition, consistent with the Division's pattern and practice of withholding essential exculpatory materials, when Plaintiffs sent a letter to the Division requesting specific categories of exculpatory materials and a particularized response to each request to the effect that

---

[75] *Tilton*, No. 3-15452, Admin. Proceedings Rulings Release No. 4124 (ALJ Sept. 2, 2016).
[76] Mot. in *Limine* to Preclude the Division of Enforcement from Seeking Disgorgement, *Tilton*, No. 3-16462 (SEC Aug. 31, 2016).
[77] *Tilton*, No. 3-15452, Admin. Proceedings Rulings Release No. 4124 (ALJ Sept. 2, 2016).
[78] Resp'ts' Mem. of Law in Supp. of Resp'ts' Mot. for Limited Modification of May 7, 2015 Order, *Tilton*, No. 3-16462 (SEC Aug. 22, 2016).

such materials do not exist or are not in the government's possession, the Division refused. Plaintiffs were thus forced to file a motion to compel. Plaintiffs were also forced to move to compel the production of certain witness statements under the Jencks Act that the Division refused to produce voluntarily.[79] These materials included notes reflecting the Division's communications with witnesses' counsel before the issuance of the OIP and communications with witnesses and their counsel after the issuance of the OIP. The ALJ denied Plaintiffs' motion, claiming it was not clear how such notes could contain witness statements, and accusing Plaintiffs of engaging in a "fishing expedition," notwithstanding Plaintiffs' showing that the Division had participated in more than fifty meetings or telephone conversations with witnesses' counsel, for which no discovery or statements were produced.[80] The ALJ likewise declined to address Plaintiffs' contention that the Division's notes were likely to contain Jencks material since there were no discovery or witness statements produced for many of the Division's witnesses. The Division's refusal to turn over this information and the ALJ's endorsement of that position is emblematic of the SEC's pattern and practice of withholding witness statements.

71.    In short, in Plaintiffs' proceeding, the ALJ has routinely dismissed motions mere days after they are filed (at most), in terse responses that largely ignore the substance of each motion. All the while, the Division continues to pursue its case against Plaintiffs, shielded by fundamentally unfair discovery and evidentiary rules of practice that go unchecked. In all of these respects, Plaintiffs' experience is illustrative of the patterns and practices by which the SEC deprives respondents in administrative proceedings of their due process right to have a meaningful opportunity to prepare their defense.

---

[79]  *See* 18 U.S.C. § 3500 (requiring the production to the defendant of "any statement" of government witnesses, as defined in the Act, that is in the possession of the government).

[80]  *Tilton*, No. 3-16462, Admin. Proceedings Rulings Release No. 4137 (ALJ Sept. 8, 2016).

## The SEC's Discriminatory Targeting Of Certain Individuals Challenging The Constitutionality Of SEC Administrative Proceedings

72.     As more litigants became subject to the SEC's in-house administrative proceedings after the enactment of the Dodd-Frank Act, several of them filed challenges to the constitutionality of those proceedings, under the Appointments Clause; the non-delegation doctrine of Article I (by allowing the Commission "unfettered" discretion to select its forum); the Seventh Amendment right to a jury trial; and separation of powers by preventing the President from exercising Executive power over "inferior officers" (ALJs).[81]

### *The SEC Is Facing Constitutional Challenges To Its Appointment Of ALJs.*

73.     On January 21, 2015, the SEC commenced an administrative proceeding against Barbara Duka alleging violations of the Securities Act.  That same month, Ms. Duka filed a complaint against the SEC seeking to enjoin the administrative proceeding on the ground that restrictions on the removal of SEC ALJs were unconstitutional.  On April 15, 2015, the district court denied Ms. Duka's motion for a preliminary injunction on the ground that she was unlikely to succeed on the merits of her claims.[82]  On June 10, 2015, Ms. Duka filed an amended complaint, arguing that the SEC ALJ assigned to preside over the administrative proceeding was not appointed by the SEC Commissioners in accordance with the Appointments Clause.  On August 12, 2015, the district court found subject-matter jurisdiction and issued a preliminary injunction on the ground that, as set forth in Ms. Duka's amended complaint, the SEC's ALJs

---

[81]  *See Hill v. SEC*, 114 F. Supp. 3d 1297 (N.D. Ga. 2015), *vacated and remanded* 825 F.3d 1236 (11th Cir. 2016); *see also, e.g.*, *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2105); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015); *Raymond J. Lucia Cos. v. SEC*, No. 15-1345, 2016 WL 4191191 (D.C. Cir. Aug. 9, 2016); *Timbervest, LLC*, Investment Advisers Act Release No. 4197, Investment Company Act Release No. 31830, 2015 WL 5472520 (Sept. 17, 2015) (Op. of Comm'n).

[82]  *See Duka v. SEC*, 103 F. Supp. 3d 382, 385-86 (S.D.N.Y. 2015), *abrogated by Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016).

were not lawfully appointed under the Appointments Clause.[83]  On August 27, 2015, the SEC appealed.[84]

74.    In February 2015, the Commission served Charles L. Hill, Jr. with an OIP, seeking a cease-and-desist order, a civil penalty, and disgorgement, and alleging that Mr. Hill unlawfully profited from nonpublic information in his purchase and sale of stock in a company called Radiant Systems, Inc.[85]  Mr. Hill raised three affirmative defenses in motions for summary disposition before the ALJ:  that the removal process for ALJs violated the removal protections in Article II of the Constitution; that administrative enforcement actions before an ALJ violated the non-delegation doctrine under Article I of the Constitution, and that the SEC's power to bring administrative proceedings violated Mr. Hill's Seventh Amendment right to a jury trial.[86]  The ALJ denied the motion, concluding that he lacked authority to rule on Mr. Hill's second and third defenses, and, although ruling on the first defense, expressing doubt concerning his ability to reach that defense as well.[87]

75.    Five days after the ALJ issued the order regarding Mr. Hill's constitutional challenges, Mr. Hill filed a complaint in federal district court seeking to enjoin the SEC proceedings based on the same constitutional arguments described above, as well as an Appointments Clause claim.[88]  The district court agreed with Mr. Hill and granted his motion for a temporary restraining order, finding the ALJ's appointment likely unconstitutional.[89]  The Commission appealed.

---

[83]  *See Duka v. SEC*, 124 F. Supp. 3d 287, 289 (S.D.N.Y. 2015), *vacated and remanded* (June 13, 2016).
[84]  Notice of Civil Appeal, *Duka v. SEC*, No. 15-2732 (2d Cir. Aug. 27, 2015) (Dkt. 1).
[85]  *Hill*, 114 F. Supp. 3d at 1301.
[86]  *Id.* at 1304-05.
[87]  *Id.* at 1305.
[88]  *Id.*
[89]  *Id.* at 1320.

76.     Mr. Hill's case was consolidated with a similar case brought by Gray Financial Group, Inc., its founder and principal Laurence O. Gray, and its Co-Chief Executive Officer Robert C. Hubbard.[90]  In August 2013, the SEC began investigating whether Gray Financial complied with the Georgia Public Retirement Systems Investment Authority Law.[91]  The Gray respondents filed a complaint in district court in February 2015, requesting a declaratory judgment that the removal protections for ALJs violated Article II of the Constitution.[92]  The Commission instituted proceedings against the Gray respondents in May 2015.[93]  On June 15, 2015, the Gray respondents filed a motion for a preliminary injunction.[94]  The district court concluded it had subject-matter jurisdiction, and granted the injunction on the ground that the hiring of SEC ALJs violated the Appointments Clause because the ALJs were inferior officers.[95] The Commission appealed, and the Eleventh Circuit consolidated the *Hill* and *Gray* appeals.[96]

77.     In March of 2015, after investigating Ms. Tilton for more than five years, the Commission, after a rare three-two vote in favor of prosecution, issued an OIP commencing administrative proceedings against Tilton and Patriarch.  Two days after the Commission issued the OIP, Ms. Tilton brought a constitutional challenge to the administrative enforcement proceedings in the Southern District of New York.[97]  Ms. Tilton sought an injunction of the proceedings and a declaratory judgment that the appointment scheme for the SEC's ALJs violated the Appointments Clause of the Constitution,[98] and that the limits on the President's

---

[90]   Consolidation Order, *Gray Fin. Grp., Inc. v. SEC*, No. 1:15-cv-0492-LMM, 2015 WL 10579373 (N.D. Ga. Oct. 7, 2015) (No. 15-13738-F) (Dkt. 77).
[91]   Compl. ¶ 21, *Gray Fin. Grp.*, 2015 WL 10579373 (No. 15-cv-000492) (Dkt. 1).
[92]   *See id. generally*.
[93]   *Gray Fin. Grp.*, 2015 WL 10579373, at *3.
[94]   *Id.*
[95]   *Id.* at *4-10.
[96]   *See Hill v. SEC*, 825 F.3d 1236, 1237 (11th Cir. 2016).
[97]   Compl., *Tilton v. SEC*, No. 15-cv-2472, 2015 WL 1501674 (S.D.N.Y. June 30, 2015) (Dkt. 1).
[98]   *See* U.S. Const., art II., § 2, cl. 2.

authority to remove ALJs violated separation of powers.[99]  The district court found that it lacked subject-matter jurisdiction over Ms. Tilton's constitutional claims.[100]  Ms. Tilton immediately appealed to the Second Circuit.  A day after oral argument in that forum, the Second Circuit stayed the administrative enforcement proceedings.[101]

78.    On February 29, 2016, the Second Circuit adjourned the SEC's appeal of the decision in *Duka* pending a decision in *Tilton*.[102]  On June 1, 2016, a divided Second Circuit panel affirmed the district court in Ms. Tilton's case, holding that Congress implicitly precluded federal jurisdiction over Ms. Tilton's Appointments Clause claim during the pending Commission proceeding.[103]  It did not, however, reach the merits of her Appointments Clause challenge.

79.    On June 13, 2016, the Second Circuit issued an order vacating the injunction in Ms. Duka's case, and remanding for further proceedings consistent with *Tilton*.[104]  After further briefing between the parties in the *Tilton* appeal, the Second Circuit clarified that its stay of the administrative proceedings in Ms. Tilton's case would remain in place until July 6, 2016.[105]  Ms. Tilton and Patriarch filed a petition for rehearing or rehearing en banc on July 15, 2016, which was denied on August 23, 2016;[106]  Ms. Duka moved for rehearing or rehearing en banc on July 27, 2016, which was also denied on August 23, 2016.[107]

---

[99]   *See* U.S. Const., art II., § 1.
[100]  *Tilton*, 2015 WL 4006165, at *13.
[101]  *Tilton v. SEC*, 824 F.3d at 281.
[102]  Order, *Duka v. SEC*, No. 15-2732 (2d Cir. Feb. 29, 2016) (Dkt. 70).
[103]  *Tilton*, 824 F.3d 276.
[104]  Order, *Duka v. SEC*, No. 15-2732 (2d Cir. June 13, 2016) (Dkt. 79).
[105]  Order, *Tilton v. SEC*, No. 15-2103 (2d Cir. June 28, 2016) (Dkt. 125).
[106]  *See Tilton v. SEC*, No. 15-2103 (2d Cir. July 15, 2016 & Aug. 23, 2016) (Dkts. 150 & 158).
[107]  *See SEC v. Duka*, No. 15-2732 (2d Cir. July 27, 2016 & Aug. 23, 2016) (Dkts. 97 & 101).

80.    On June 17, 2016, the Eleventh Circuit found that the district court in the *Hill* and *Gray* cases lacked subject-matter jurisdiction, vacated the district court's preliminary injunction orders, and remanded with instructions to dismiss the actions for lack of jurisdiction.[108]  Both the *Hill* and *Gray* plaintiffs filed a petition for rehearing on August 1, 2016, which the Eleventh Circuit denied on September 6, 2016.[109]  Under Federal Rule of Appellate Procedure 41, the mandate will issue in seven days unless the parties seek a further stay pending a petition for *certiorari*.[110]

### *The SEC Has Adopted Amended Rules Of Practice.*

81.    Just seven days after the Second Circuit stayed SEC proceedings in Ms. Tilton's case, on September 24, 2015, the SEC proposed amendments to its Rules of Practice governing the SEC's internal administrative proceedings.  In announcing the proposed amendments, SEC Chair Mary Jo White said, "The proposed amendments seek to modernize our rules of practice for administrative proceedings, including provisions for additional time and prescribed discovery for the parties."  In a November 24, 2015, *Wall Street Journal* article, Chair White noted that the SEC had "put out for comment [Proposed Rules] to modernize [the SEC's] administrative proceedings.  Should there be more discovery?  Should there be more time provided before there's a hearing?"  In response to a question whether it was her "belief . . . that the system does need some refinement," Ms. White responded, "[t]he rules haven't been modernized for almost 10 years, so yes."

---

[108]   *Hill*, 825 F.3d at 1252.

[109]   Pet. for Reh'g, *Hill v. SEC*, No. 15-12831 (11th Cir. Aug. 1, 2016); Order, *Hill v. SEC*, No. 15-12831 (11th Cir. Sept. 6, 2016).

[110]   Fed. R. App. P. 41.

82.     In fact, the Commission had come under increased scrutiny from the bench and bar alike for its heavy reliance on administrative proceedings that lack the basic due process procedures of Article III courts.  Judge Rakoff, for example, commented that the forum allowed the SEC to "become a law unto itself."[111]  Several ALJs, moreover, identified "systemic causes" of bias against respondents in administrative proceedings,[112] including "the rules of practice (which the SEC has recently proposed to amend), limited access by respondents to discovery and the investigative case file, and truncated timelines."[113]

83.     As more than one commentator noted, "the SEC's proposed amendments, while styled as procedural amendments, clearly attempt to address criticisms of the fairness of its administrative proceedings structure without conceding its unconstitutionality."[114]  The amendments to the Commission's Rules of Practice were proposed "to provide parties in administrative proceedings with the ability to use depositions and other discovery tools."[115]  The Commission recognized that allowing respondents to take depositions would provide them with "an opportunity to develop arguments and defenses through deposition discovery, which may narrow the facts and issues to be explored during the hearing."[116]

84.     The Amended Rules, as adopted, provide respondents with significant additional procedural protections, although they do not remedy all of the unfair advantages enjoyed by the Division—or disadvantages imposed on respondents—in an administrative proceeding.  For

---

[111]  Judge Jed S. Rakoff, Keynote Address at the PLI Securities Regulation Institute:  Is The S.E.C. Becoming A Law Unto Itself? (Nov. 5, 2014).

[112]  *See* Mem. from Carl W. Hoecker, Inspector General, to Mary Jo White, Chair, Transmittal of Report of Investigation, Case No. 15-ALJ-0482-I, at 20 (Jan. 21, 2016).

[113]  *Id.*

[114]  Elizabeth P. Gray, et al., *Will the Securities and Exchange Commission's Proposed Changes to Administrative Proceedings Quiet Critics?* 22 The Investment Lawyer, no.12, at 3 (Dec. 2015).

[115]  80 Fed. Reg. 60,091.

[116]  *Id.* at 60,091.

example, the Amended Rules extend the timeline between the OIP and the start of a hearing from approximately four months to up to 10 months, and provide 120 days following the completion of post-hearing briefing for the ALJ to issue a final decision.[117]  The Amended Rules also allow respondents to take up to five depositions without regard to whether the deponents are available to testify at the hearing, plus an additional two upon a showing of "compelling need," and to request the issuance of subpoenas requiring the attendance and testimony of witnesses at depositions.[118]

85.     The SEC "proposed that [the] amended Rules govern any proceeding commenced after the effective date of the amended Rules," and solicited "comments about whether the amended Rules should be applied, in whole or in part, to proceedings that are pending or have been docketed before or on the effective date, and if so, the standard for applying any amended Rules to such pending proceedings."[119]

86.     Commenters suggested that the Amended Rules apply as broadly as possible to pending cases.  Ms. Tilton's counsel, Skadden, Arps, Slate, Meagher & Flom ("Skadden"), for example, submitted comments reminding the SEC of Ms. Tilton's case and the procedural inequities therein, and urged the Commission to apply its new Rules to pending cases.  Skadden argued that "any changes that enhance the rights of respondents, no matter how small, should apply to proceedings pending on their effective date."[120]  The letter added that "[t]here is no reason to deny a respondent [the benefit of additional time to prepare for a hearing and allowing

---

[117]  Final Rule, *Rule 360 (Initial Decision of Hearing Officer and Timing of Hearing)*, 81 Fed. Reg. 50,211, 50,213 (July 29, 2016) (to be codified at 17 C.F.R.§ 201.360).
[118]  *Id*. at 50,215-19.
[119]  80 Fed. Reg. at 60,097.
[120]  David M. Zornow, Christopher J. Gunter, & Chad E. Silverman, Comment Letter on Proposed Amendments to the Commission's Rules of Practice, at 4 (Dec. 4, 2014) [hereinafter "Zornow Letter"].

additional discovery] simply because the SEC chose to institute a proceeding against that respondent prior to the effective date of the amendments."[121]  Another commenter, Navistar International Corp., also suggested that "the amended Rules should be applied in whole to cases pending as of the effective date where possible."[122]  A third "respectfully submit[ted] that the proposed amendments should . . . apply to pending cases where 'just and practicable,'" and that "for administrative respondents who had not had an evidentiary hearing before an SEC Administrative Law Judge, a prospective application of the amended rules would be unjust."[123] A fourth comment from Gibson Dunn & Crutcher, LLP "support[ed] applying the amended rules to pending matters to the fullest extent possible."[124]

87.     As many of the commenters noted, when the Federal Rules of Civil Procedure are amended, those amendments generally apply to pending cases, unless such an application would "work injustice."[125]  They noted that "[t]he Supreme Court has long held that, because rules of procedure govern secondary conduct rather than primary conduct, applying such rules to cases pending on their effective date does not necessarily violate the presumption against retroactivity."[126]

---

[121]  Zornow Letter at 4.
[122]  Navistar Int'l Corp., Comment Letter on Proposed Amendments to the Commission's Rules of Practice, at 1 (Dec. 3, 2015).
[123]  Stephen E. Hudson, Kilpatrick Townsend, Comment Letter on Proposed Amendments to the Commission's Rules of Practice, at 1 (Dec. 3, 2015).
[124]  Theodore B. Olson, Comment Letter on Proposed Amendments to the Commission's Rules of Practice, at 10 (Dec. 4, 2015) [hereinafter "Gibson Letter"].
[125]  Zornow Letter at 4 (citing, among others, *Paluch v. Sec'y Pa. Dep't of Corr.*, 442 F. App'x 690, 2011 WL 3652418, at *2 (3d Cir. 2011) ("Generally, when amended procedural rules take effect during the pendency of a case, the amended rules will be given retroactive application to the maximum extent possible, unless doing so would work injustice.")).
[126]  Gibson Letter at 11 (quoting *Altizer v. Deeds*, 191 F.3d 540, 546 (4th Cir. 1999)).

88.     On June 17, 2016, the Eleventh Circuit vacated the district court's injunctions in the *Hill* and *Gray* cases, and denied a petition for rehearing on September 6, 2016.[127]  The mandate is expected to issue seven days following that order.[128]

89.     On February 26, 2016, the Second Circuit adjourned *Duka*'s case to wait for the result of *Tilton*.  The Second Circuit affirmed the district court's dismissal of Ms. Tilton's suit on June 1, 2016.  On June 28, 2016, the Second Circuit notified the parties—including the SEC— that the stay in Ms. Tilton's case would be lifted on July 6, 2016.  As reported, the stay was lifted on July 6, and the SEC issued an agenda that included a vote on adoption of the Amended Rules of Practice the very next day, July 7, 2016.

90.     The Amended Rules were released after the vote on July 13, 2016.  Because these rules were not published in the Federal Register until July 29, 2016,[129] their effective date will be September 27, 2016.  As a result, the most favorable rules—concerning the availability of discovery through depositions and more flexible timing for the hearing—will not apply to Plaintiffs and are highly unlikely to apply to any of the other Appointments Clause challengers.

91.     That is because, rather than adopting the suggestions of numerous commenters— that the SEC apply the Amended Rules to pending proceedings as broadly as possible and to the extent justice requires—the SEC determined that the Amended Rules relating to the timing of the hearing and the availability of depositions should apply only "to proceedings where the prehearing conference has not yet been held as of the effective date of these rules, as well as to proceedings that are stayed (other than pursuant to consideration of a settlement offer under Rule 161(c)(2)(i)), whether by court or Commission order, as of the effective date."[130]  In so doing,

---

[127]  Order, *Hill v. SEC*, No. 15-12831 (11th Cir. Sept. 9, 2016).
[128]  *See* Fed. R. App. P. 41.
[129]  81 Fed. Reg. at 50,212.
[130]  *Id.* at 50,229.

the Commission eschewed applying a "'just and practicable' standard to determine whether the amended rules should apply in a given proceeding," instead presenting tables that "reflect the Commission's determinations of what is just and practicable" without any consideration of the individual circumstances presented by each proceeding.[131]

92.     *No* commenter suggested that the Rules should apply differently to cases that are stayed on the Amended Rules' effective date—the Commission, nonetheless, *sua sponte* adopted this rule without any explanation and without advising the public how the final rules would differ from their proposed versions.

93.     At the time the SEC voted to adopt the Proposed Rules, both the Second and Eleventh Circuits had held that the district courts lacked jurisdiction over the collateral challenges to the SEC's appointments of ALJs under the Appointments Clause.  As a result of the Second Circuit's order clarifying that the stay in *Tilton* would be lifted on July 6, it was clear that the stay in Ms. Tilton's case would be lifted well ahead of the effective date of the rules.  And while Ms. Duka's, Mr. Hill's, and the Gray respondents' stays would last until the denial of their petitions for rehearing, the likelihood of their stays still being in place as of the effective date of the Amended Rules was slim.  In fact, the Eleventh Circuit recently denied Mr. Hill's and the Gray respondents' petition for rehearing, and the mandate is expected to issue seven days after the September 6, 2016, order.

94.     Significantly, the respondents in all of these cases have already had their prehearing conferences.  Under the SEC's Amended Rules, and because of when those Rules were adopted, these respondents are unlikely to receive the benefit of the Amended Rules.  On information and belief, that timing—and the exclusion of these respondents from the benefits of

---

[131]  81 Fed. Reg. at 50,229.

the Amended Rules—was deliberate.  Indeed, the SEC issued its Sunshine Act Notice regarding

the Amended Rules just one day after it became clear that Plaintiffs' case could not benefit from

the Amended Rules.

95.     There is no rational basis for the SEC's disparate treatment of these particular

matters.  On information and belief, the SEC adopted such disparate policies regarding the

application of the Amended Rules in retaliation against certain individuals who brought

Appointments Clause challenges to the SEC's administrative proceedings in federal court and

who were the subjects of ongoing administrative proceedings, including Plaintiffs.

96.     There are additional reasons for the SEC to treat Ms. Tilton as a special case.

First, the SEC is seeking over $200 million in disgorgement from Ms. Tilton alone, nearly seven

times more than the $32 million collected in the disgorgement and penalties from all litigated

administrative proceedings in fiscal year 2015.[132]

97.     Second, as one of Wall Street's most successful and outspoken women,

Ms. Tilton has long attracted—and generated—intense media coverage, including with respect to

her constitutional challenge to the SEC's administrative proceedings.[133]  Interest in her has only

increased in the Internet age:  Ms. Tilton has more than 700,000 Twitter followers, and Google

searches reveal numerous videos featuring Ms. Tilton, including her appearances on "Secret

Lives of the Super Rich," and "20/20 Barbara Walters Billionaire Secrets."[134]  Indeed, at one

point, Ms. Tilton was slated to be the subject of a reality TV show called "The Diva of

---

[132] *See Office of Admin. Law Judges*, U.S. Sec. Exch. Comm'n, http://www.sec.gov/alj (last visited Sept. 8, 2016).

[133] *See, e.g.*, Sheelah Kolhatkar, *How Lynn Tilton Went from Company Savior to SEC Target*, Bloomberg (Jul. 16, 2015), http://www.bloomberg.com/news/features/2015-07-16/how-lynn-tilton-went-from-company-savior-to-sec-target; Jessica Pressler, *What Does It Take for a Female Tycoon to Get Noticed Around Here*, N.Y. Magazine (Apr. 10, 2011), http://nymag.com/news/business/wallstreet/lynn-tilton-2011-4/.

[134] *See, e.g.*, Patriarch Partners Lynn Tilton:  Why I Sued the SEC, https://youtu.be/rIyZuOPQQVQ (last visited Sept. 8, 2016).

Distressed."[135]  Since the issuance of the OIP, Ms. Tilton has remained in the spotlight, and has

taken on the SEC in the arena of public opinion.  As one *Bloomberg* reporter put it, Ms. Tilton

"launched a social media campaign unprecedented in the history of financial regulation" against

the SEC.[136]  With its proceedings the subject of near-constant public scrutiny, the SEC has every

incentive to vigorously pursue its highly publicized allegations against Ms. Tilton and the

Patriarch entities with every discovery and evidentiary benefit it can secure for itself.

98.     Plaintiffs notified the ALJ overseeing the administrative proceedings of their

concern that the Division was seeking to single out Ms. Tilton and a limited number of other,

similarly situated respondents in deciding when and how the Amended Rules would apply.  They

also sought to subpoena the Commission with respect to the timing of the Amended Rules of

Practice and, more generally, any discussions between and among the Commission and third

parties about Ms. Tilton, the Patriarch entities, or the pending administrative proceedings.  The

Division and the Office of Litigation and Administrative Practices within the Office of the

General Counsel ("OLAP") responded, claiming that all of the information requested was

burdensome, and citing a laundry list of every conceivable privilege the Commission could

invoke.  OLAP made no attempt to meet its burden of proving that any of this material was, in

fact, privileged.  While acknowledging that OLAP provided no "elaboration" for its blanket

denial of information on the basis of multiple unspecified privileges, or its invocation of the

deliberative process privilege in particular, the ALJ largely denied Ms. Tilton's requests for

those materials, which it characterized as relating to "collateral issues to th[e] administrative

proceeding."[137]  The ALJ did so notwithstanding that case law makes clear that the government

---

[135]  *See* Sam Thielman, *Sundance Channel Announces Expansion Plans*, Variety (Mar. 1, 2011),
http://variety.com/2011/tv/news/sundance-channel-announces-expansion-plans-1118033106.
[136]  *Supra* n.133.
[137]  *Tilton*, File No. 3-15452, Admin. Proceedings Rulings Release No. 4116 (ALJ Sept. 1, 2016).

must offer more than conclusory assertions that material is privileged in order to invoke the deliberative process privilege, and that even predecisional and deliberative communications are not privileged when they are sought to support a claim of improper motives in the decision-making process, as Plaintiffs have alleged here.[138]

### Tilton And Other Appointments Clause Challengers Are Forced To Undergo Administrative Proceedings Under Outdated And Unfair Rules.

99.     Plaintiffs also petitioned the Commission to apply the Amended Rules on the timing of hearings and discovery to her case, noting that (1) there was still sufficient time to conduct depositions, (2) the case was unusually complex, (3) the stakes were unusually high, and (4) the Commission had taken a protracted period of time to investigate Plaintiffs' conduct—five years—compared to the mere handful of months Plaintiffs have had to prepare a defense.  The Commission denied the petition on August 24, 2016, responding that it "has already considered how the Amended Rules should apply to pending proceedings."[139]  The Commission noted that it "has already determined that this is not 'just and practicable'" and, more specifically, that "[t]he Amended Rules apply to pending proceedings 'depending on the stage of the proceeding.'"[140] The Commission added that "[t]his is a case that was stayed on the eve of a final hearing," and therefore "[a]pplying these Amended Rules to such a case . . . runs counter to the Commission's

---

138   *See In re Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (denying the government's assertion of deliberative due process privilege) ("When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons . . . Whether or not under those circumstances it is accurate to refer to the agency's decisionmaking process as collateral, it is clear that the ordinary . . . cause of action does not directly call into question the agency's subjective intent."); *see also Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 853-57 (3d Cir. 1995) (rejecting the application of the deliberative process privilege, as the Government's claims under the privilege were too general).

139   *Tilton*, SEC Release No. 3796, 2016 WL 4447011, at *4 (ALJ Aug. 24, 2016).

140   *Id.* at *5.

determination that for cases in a sufficiently advanced posture, application of these Amended Rules would delay resolution and 'unduly disrupt pending proceedings.'"[141]

100.     Had the Commission allowed all respondents in ongoing proceedings to benefit from the extended pre-hearing litigation schedule contemplated by the Amended Rules, Plaintiffs would have had more than sufficient time to take the five allotted depositions.

101.     The Commission's explanation, moreover, is directly belied by its decision to apply the timing and deposition rules to *all* "proceedings that are stayed . . . as of the effective date," regardless of the "stage of proceeding" they are in.  If not for the Second Circuit's lifting of the stay—a day after the SEC decided to begin the process of formally adopting these Rules—the deposition and timing rules *would* have applied to Plaintiffs.

102.     Plaintiffs deny all allegations of wrongdoing and stand ready to mount a defense against all of the Commission's charges, but the Commission's soon-to-be superseded Rules of Practice require them to do so on an egregiously unfair playing field.  This case involves millions of pages of documents, and the prospective trial evidence includes nearly 700 trial exhibits, at least 45 proposed trial witnesses, and 11 expert reports totaling over 400 pages that cover an array of complex, technical issues.  Plaintiffs are, nonetheless, held to an abbreviated 300-day schedule for *the entire proceeding, from filing to finish* (excepting the period of the Second Circuit stay), even though ALJs are regularly granted extensions after the close of a hearing, all based solely on an administrative rule of convenience.  Plaintiffs' ability to develop evidence in support of their defenses, moreover, is significantly curtailed by their inability to depose witnesses who will be "available to testify" at their trials by ambush.

---

[141]   *Tilton*, SEC Release No. 3796, 2016 WL 4447011, at *4.

**Irreparable Harm**

103.    It is appropriate and necessary for this Court to exercise jurisdiction over Plaintiffs' claims because (a) without judicial review at this stage, Plaintiffs will suffer irreparable harm and meaningful judicial review will be foreclosed; (b) Plaintiffs' claims are wholly collateral to the review provisions of the securities laws; and (c) Plaintiffs' claims are not within the particular expertise of the SEC.

104.    The SEC's administrative proceeding does not provide a reasonable mechanism for raising or pursuing Plaintiffs' claims.  Plaintiffs cannot bring counterclaims against the SEC in an administrative proceeding.  Even if they could, the administrative proceedings "do not provide a reasonable mechanism for raising or pursing such" claims.[142]  Any administrative record developed through those proceedings would be inadequate for full and fair adjudication of Plaintiffs' claims, particularly insofar as they involve patterns and practices that extend far beyond the Commission's or Division's conduct in one particular case.  In any event, there is an inherent conflict in allowing the adjudicator to evaluate its own bias, as would be the inevitable result if Plaintiffs attempted to raise these claims in the administrative proceeding or on appeal to the Commission.

105.    Proceeding to trial under constitutionally defective procedures will inflict substantial and irreparable harm on Plaintiffs.  As set forth in paragraphs 1 through 71 above, the Commission is engaged in a pattern and practice of conducting administrative investigations and adjudicatory proceedings in a manner that prevents respondents from mounting a meaningful defense, including by taking substantial time to conduct investigations; insisting that ALJs decide cases on a severely truncated timetable; denying respondents adequate notice of the

---

[142]   *Gupta v. SEC*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011).

charges; depriving respondents of any meaningful opportunity to gather information from key witnesses, including by refusing deposition requests, withholding notes of interviews, and declining to timely identify their investigative interviewees; relying on expert testimony that includes legal conclusions and suffers from numerous other defects; and otherwise withholding material exculpatory evidence.

106.    The harm inflicted by this deprivation of due process cannot be adequately addressed by further judicial review at the close of these proceedings.  As time passes, witnesses' memories will fade—if, indeed, key witnesses even remain available to testify—and key evidence will surely become stale or be misplaced or discarded.  If Plaintiffs are denied the opportunity to obtain critical information and access to witnesses at this juncture, such materials may well be unavailable at a later date.  Indeed, justice requires that claims be timely raised and litigated before "evidence has been lost, memories have faded, and witnesses have disappeared."[143]

107.    Any judicial review—and redress of the procedural violations inflicted on Plaintiffs—will be far down the road.  The median time for the Commission to render a decision on appeal from an ALJ determination is 385 days.[144]  (And, as the Commission reviews the ALJ ruling *de novo*, the Commission that brought the original charges can find facts that are diametrically opposed to those found by the ALJ even if the respondent prevails in the administrative proceeding.)  Review by an Article III court will take months, and likely years, more.

---

[143]  *Gabelli v. SEC*, 133 S. Ct. 1216, 1221 (2013) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)).

[144]  Report on Administrative Proceedings, Exchange Act Release No. 77733 (Apr. 27, 2016), *available at* https://www.sec.gov/reportspubs/special-studies/34-77733.pdf.

108.    Not only will the passage of time likely strip Plaintiffs of the chance to secure key evidence and witness statements, it will have dire, irreparable economic consequences for Plaintiffs.  The value of the portfolio companies in which Ms. Tilton has invested, a number of which she manages on a day-to-day basis and for which her relationships are key to the enterprise's success, will be irreparably diminished, if not destroyed.  Ms. Tilton's relationships with the employees of these companies and their contracting partners will be irreparably damaged, and the companies will be crippled in competing for new business opportunities.

109.    In addition, a determination that Plaintiffs have engaged in fraud would not only destroy Plaintiffs' reputations, but would end their participation in the public markets as a practical matter, with or without a permanent bar from employment in the securities industry.  If the Division prevails in the administrative proceeding, the Commission may bar Ms. Tilton from employment in the securities industry and, as it has done in prior proceedings, refuse to stay that order pending appeal.  Preventing Ms. Tilton from practicing her chosen profession imposes irreparable harm in the form of economic losses and reputational injury.  And because the SEC enjoys sovereign immunity from actions seeking monetary damages, Ms. Tilton likely will be unable to recover her economic losses or remedy her reputational injury through a damages action.

110.    Plaintiffs' due process and equal protection claims, moreover, are wholly collateral to the administrative proceeding, as they are unrelated to the merits of the SEC's claims against Plaintiffs.  Success in this proceeding would not establish Plaintiffs' innocence of the allegations in the OIP; and the outcome of the administrative proceedings would not impact the validity of Plaintiffs' claims here.

111.     In addition, the relief Plaintiffs seek is outside the scope of an individual administrative proceeding and beyond the authority of an ALJ or the Commission, within its review of Plaintiffs' individual cases, to grant because it would apply beyond Plaintiffs' individual administrative proceeding to other currently pending cases.

112.     In addition, Plaintiffs' due process and equal protection claims are not peculiarly within the SEC's competence or expertise; in fact, it is unreasonable and fundamentally unfair to require the SEC to evaluate, for itself, whether it discriminated against Plaintiffs in denying them the benefit of its modernized Rules or whether the SEC and ALJs, in particular, have a practice and policy of violating litigants' due process rights.

**Deprivation of Procedural Due Process**

113.     Plaintiffs repeat and re-allege paragraphs 1 through 71 and 103 through 112 as if set forth in full.

114.     The Due Process Clause of the Fifth Amendment provides that "[n]o person . . . shall be deprived of life, liberty, or property, without due process of law."[145]

115.     "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth . . . Amendment."[146]

116.     The Commission and the Division are depriving Plaintiffs of their due process rights by denying them a meaningful opportunity to prepare their defense in constitutionally defective administrative proceedings, while seeking hundreds of millions of dollars in disgorgement and civil penalties, as well as a permanent bar from employment in the securities industry.

---

[145]   U.S. Const. amend. V.
[146]   *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

117.    This deprivation is effectuated by the SEC's pattern and practice of failing to provide adequate notice of charges in charging documents, denying respondents in administrative proceedings depositions, refusing to produce critical evidence and exculpatory materials, relying on improper expert testimony, and pressing for an initial decision by an ALJ on an accelerated timeframe, all the while giving the Division years to prepare its case, along with the other patterns and practices detailed herein.

## Violation of Equal Protection

118.    Plaintiffs repeat and re-allege paragraphs 1 through 25 and 72 through 112 as if set forth in full.

119.    The Equal Protection Clause of the Fifth Amendment provides that the government shall not deny to any person equal protection under the law.

120.    The Commission is violating Plaintiffs' equal protection rights by deliberately targeting Plaintiffs and similarly situated individuals and denying them the benefit of Amended Rules that were promulgated to correct procedural and discovery deficiencies in administrative proceedings.

121.    In particular, the SEC has intentionally singled out Plaintiffs and similarly situated individuals who have brought constitutional challenges in federal courts by taking steps to deny them the benefit of the Amended Rules.  The SEC is intentionally treating certain individuals who have brought constitutional challenges to the ALJ appointment and removal practices of the SEC differently by denying them the benefit of the most helpful of the Amended Rules, including the rule regarding depositions and the rule extending the time for the issuance of an initial decision.

**Application for Injunctive Relief**

122.    Plaintiffs repeat and re-allege paragraphs 1 through 112 as set forth in full.

123.    Injunctive relief is an equitable remedy the Court may issue to prevent imminent irreparable injury, for which there is no adequate remedy at law, so long as plaintiffs demonstrate a likelihood of success on the merits and that the balance of hardships, taking into consideration any adverse effect on the public interest, tips in favor of plaintiffs.[147]

124.    Plaintiffs have a substantial likelihood of success on the merits of their due process and equal protection claims.  Plaintiffs have a due process right to have a meaningful opportunity to prepare their defense to government action, which—in these proceedings—requires sufficient notice of the charges brought against them, access to critical evidence and exculpatory materials, the ability to take depositions in advance of the hearing, the exclusion of improper expert testimony, and sufficient time to review the relevant evidence and prepare their case.  Plaintiffs also have a right under the U.S. Constitution to be treated no differently from other respondents in SEC administrative proceedings and to not be subject to disparate treatment because they asserted their constitutional rights.

125.    Plaintiffs' constitutional rights will be irreparably harmed if an injunction (and, as necessary, a preliminary injunction and temporary restraining order) is not issued to halt the SEC's administrative proceeding against them.  Without the procedural protections due process affords, Plaintiffs will be deprived of a fair trial and a meaningful opportunity to prepare their defense.

126.    The balance of hardships also favors Plaintiffs.  Plaintiffs' ability to prepare their defense will be even more acutely impeded due to the passage of time before final review of any

---

[147]    *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (articulating the standard); *see also* Fed. R. Civ. P. 65(a) (governing preliminary injunctions).

order resulting from their administrative proceeding.  In the interim, Ms. Tilton's ability to pursue her livelihood and to restore, maintain, and monetize value to the portfolio companies she oversees is at stake.  By contrast, the SEC has waited several years to begin this administrative proceeding against Plaintiffs, and has already conducted its investigation in this case, including through witness interviews and expert reports.  Any additional delay would not harm the SEC.

127.    Nor is there an adequate remedy at law.  Although the Commission and ultimately an appellate court may review the ALJ's decisions, by that time, the dozens of distressed companies in which Plaintiffs and other Patriarch affiliates have invested will be sold without Patriarch's consent, or forced to enter into bankruptcy, taking with them thousands of manufacturing jobs.  Review of Plaintiffs' administrative proceeding, moreover, will be limited to the alleged violations in Plaintiffs' case alone, and therefore, could not provide adequate relief to remedy the pattern or practice claims alleged here.

128.    Finally, an injunction will serve the public interest in ensuring that all litigants in SEC administrative proceedings are afforded due process in those proceedings.

### **Declaratory Judgment**

129.    Plaintiffs repeat and re-allege paragraphs 1 through 112 as if set forth in full.

130.    Plaintiffs request a declaratory judgment that the SEC's patterns and practices detailed herein deny due process to respondents in administrative proceedings by precluding them from preparing a meaningful defense to the SEC's allegations.

131.    Plaintiffs request a declaratory judgment that the deliberate exclusion of Plaintiffs and similarly situated respondents from application of the SEC's new rules of practice violates their right to equal protection.

## **Jury Demand**

132.     Plaintiffs hereby demand a trial by jury on all issues so triable.


**WHEREFORE**, Plaintiffs pray for judgment and relief as follows:

A.  An order and judgment declaring unconstitutional the SEC's pattern and practice of denying respondents in administrative proceedings a full and fair opportunity to develop and present their defenses;

B.  An order and judgment enjoining the Commission from doing the same in current and future proceedings;

C.  An order directing the Commission to issue guidance and provide training to Division staff regarding compliance with their obligations under *Brady*;

D.  An order and judgment declaring unconstitutional the SEC's application of the soon to be superseded Rules of Practice to Plaintiffs and similarly situated individuals;

E.  An order and judgment directing the Commission to apply the Amended Rules of Practice to Plaintiffs and similarly situated individuals;

F.  Such other and further relief as this Court may deem just and proper, including reasonable

attorneys' fees under 28 U.S.C. § 2412(b) or as otherwise appropriate, and the costs of this

action.


Dated:  New York, New York

September 9, 2016                    GIBSON, DUNN & CRUTCHER LLP



By: *s/ Randy M. Mastro*
Randy M. Mastro (SBN 1792548)
  rmastro@gibsondunn.com
Lawrence J. Zweifach
  lzweifach@gibsondunn.com
Lisa H. Rubin
  lrubin@gibsondunn.com
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Susan E. Brune
  sbrune@brunelaw.com
BRUNE LAW P.C.
450 Park Avenue
New York, NY 10022


*Attorneys for Plaintiffs*